UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No:  23-CR-10202-FDS |
| | ) | |
| LINDSAY GROVES, | ) | |
| | ) | *Leave to file redacted version* |
| Defendant. | ) | *granted May 28, 2026* |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Lindsay Groves was every parent's worst nightmare: a predator hiding in plain sight, in the place they brought their children every morning so that they would be safe and happy while the parents were at work.  Lindsay Groves did not keep the children entrusted to her care safe.  Instead, she capitalized on an opportunity to exploit the children for her own gain.

For the reasons discussed below and in the victim impact statements filed under seal, and for reasons to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a term of incarceration of 420 months (35 years) and 60 months (five years) of supervised release.

**FACTS**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 15 through 40 of the Presentence Investigation Report ("PSR").

Essentially, the defendant, a teacher at a childcare facility in Tyngsborough, Massachusetts, took advantage of her access to children to feed the sexual desires of her then-girlfriend, Stacie-Marie Laughton.  In the midst of an ongoing text-based conversation where Groves and Laughton discussed their mutual sexual interest in the children and what they would like to do with the children, the defendant followed through on what they had discussed: she took them into the bathroom, where no one would see what she was doing, and she created graphic

imagery of the children's genitals with her cell phone.  She then sent the photographs to Laughton, and the two used the images to fuel their sexually-motivated conversations.  The defendant's colleagues and clients were completely blindsided; they had no reason to suspect that Lindsay Groves had exploited three of the toddlers she was supposed to nurture and care for, until Laughton reported the crimes in an apparent attempt to punish Groves for ending their relationship. Ultimately, when confronted by police who had obtained access to their messages, the defendant admitted to taking graphic photographs of children in her care, beginning around 2022.

The text messages recovered from the approximately five-week period leading up to the defendant's arrest demonstrate an active relationship in which they discussed past sexual encounters, explicit descriptions of sex with each other and others, and indicia of their personal relationship; talk about sharing expenses, joint access to accounts, professions of their love for each other; and argue with each other, including regarding the demise of their relationship.  The messages also included the discussion about and transfer of child pornography featuring Minors 1, 2, and 3, all of whom were at the time three-year-old students at the childcare facility.

## DISCUSSION

**I.       Sentencing Guideline Calculation**

Based on its assessment of the defendant's total offense level as 43 and her criminal history category as I, the United States Probation Office ("Probation") has computed a Guidelines sentence in this case to include a term of incarceration for life (capped at the statutory maximum, 1,320 months) and supervised release from five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level[1] and Criminal History Category and thus agrees with its determination of her Guidelines Sentencing Range (GSR) as outlined above. The government agrees with Probation's treatment of the defendant's objections, as set forth below.

### A. The § 4B1.5(b) Pattern Enhancement

The defendant objects, without argument or analysis, to the application of the pattern enhancement outlined at USSG § 4B1.5(b). PSR ¶¶ 85-88; pp. 39-40. The pattern enhancement applies where "the defendant engaged in a pattern of activity involving prohibited sexual conduct," § 4B1.5(b). Application Note 4 to § 4B1.5 defines "prohibited sexual conduct" to include the production of child pornography and "pattern" as at least two separate occasions. The enhancement applies where the defendant "engages in prohibited sexual conduct multiple times against a single minor, a single time against multiple minors, or multiple times against multiple minors. All of these situations could count as a "pattern" in the ordinary sense of the word." *United States v. Regis*, 2026 WL 322501 (11th Cir. 2026) (unreported), citing *United States v. Fox*, 926 F.3d 1275, 1279 (11th Cir. 2019) (rejecting defense argument that application of § 4B1.5(b) implicitly requires multiple victims). "Multiple, distinct instances of abuse—whether ongoing, related, or random—meet the enhancement." *Fox*, 926 F.3d at 1280. Here, the defendant engaged in repeated predatory conduct with multiple victims, using Minor 1, Minor 2, and Minor 3 to engage in sexually explicit conduct for the purpose of producing four discrete visual depictions of such conduct, which she then distributed to co-defendant Laughton. Probation correctly applied

---

[1] In the written plea agreement, the government mistakenly assessed a four-level enhancement pursuant to USSG § 2G2.1(b)(5); Probation correctly notes that the enhancement is two levels. Doc. 247, ¶ 3(e); PSR ¶¶ 56, 66, 76.

the enhancement.

### B. The Application of § 5G1.2

The defendant objects to the "stacking" of statutory maximum sentences to calculate a guideline sentence of 1,320 months. PSR ¶ 143, p. 40. The Guideline, in plain language, instructs courts to implement consecutive sentences where the highest statutory maximum terms are less than the total punishment "to the extent necessary to produce a combined sentence equal to the total punishment." § 5G1.2(d). Here, the total punishment is life—an indeterminate number of years, but technically higher than the statutory maximum of 30 years on Counts One through Three and 20 years on Count Four. The "stacking" of maximum sentences to calculate the guideline sentence "is distinct from—and a precursor to—the district court's discretion to impose sentences consecutively or concurrently." *United States v. Gordy*, 2023 WL 2366641 (6th Cir. 2023) (unreported) (no abuse of discretion in calculating guideline sentence as 3,720 months where GSR was life and court imposed 25 years; "in lieu of the life sentence, the stacked statutory maximums provide the 'benchmark' for a district court in the sentencing process"). Probation has accurately calculated the guideline sentence in accordance with Chapter Five's instructions; both parties are recommending that the Court vary significantly downward from that guideline sentence, and the Court, as always, may exercise its discretion to impose a term of years below the guideline sentence. To the extent the defendant develops this argument beyond a mere assertion that Probation's adherence to the Guideline renders it "mandatory," PSR p. 40, the government will address that argument as necessary at the sentencing hearing.

## II.     Application of the Section 3553(a) Factors

Based on an evaluation of all of the § 3553(a) factors, the government submits that its recommended sentence is a fair one that appropriately reflects the seriousness of the offense,

promotes respect for the law, and provides just punishment for the offense; affords adequate deterrence to criminal conduct; and protects the public.

The government recognizes that it is difficult to quantify exactly how many years would satisfy the Court's obligation to impose a sentence that achieves these goals of sentencing. It goes without saying that a truly significant sentence is necessary to reflect the gravity of the defendant's crimes. For this defendant, that means decades.

Here, the defendant was in a position that inherently triggered and required the trust of the community. Lindsay Groves was entrusted—for years—with the care of some of the most vulnerable among us: toddlers attending daycare. These were children who were not yet fully potty trained, not old enough to go to the bathroom themselves, and not fully verbal. This was not a crime of opportunity, nor was it one that the defendant stumbled into or was forced into. This was planned, it was strategized, and it was carried out for the sexual gratification of one or both defendants in this case.

The government has considered the defendant's history and characteristics, as they are outlined in the defendant's aid-in-sentencing evaluation and the PSR. That Lindsay Groves has certain deficits, even significant ones, is uncontested. But in measuring her liability for this offense, both individually and as compared to her co-defendant, it cannot be said that "but for" those deficits, she would not have acted in the way that she did. As this Court has recognized, "the defendant has repeatedly shown that despite her many limitations, she is capable of ordered thinking and rational communication, and that she has the ability to navigate reasonably complex situations, including obtaining higher education and holding employment for extended periods." Doc. 236, p. 3.

The defendant's text messages with her co-defendant buttress this conclusion and

underscore that Lindsay Groves is not a victim here. See, for example, her communication with

Laughton on June 7, 2023:

> GROVES: I'm horny right now
>
> LAUGHTON: I was asking because I know we've had some back-and-forth and I know we initially said we do nothing with kids ever again and you said you were afraid that if we had kids if they would go back and tell the parents the same with the kids you work with when I was trying to ask you do you seriously see no problem with sex with children like I had always wanted to put my dick inside one of the little girls you work with, but you said they were too little and then you said I could so I don't know I know you're horny I'm trying to get clean and I already have the hot water running baby.
>
> GROVES: I want to do it with the kids at work
>
> GROVES: than you can put your dick inside them
>
> GROVES: I wasn't being serious about the kids running back and telling their parents
>
> GROVES: Plus I want to do it with kids who use to come here cause they can enjoy it
>
> LAUGHTON: Well, I know but you were afraid that the kids at work might tell their parents and we said we would do it if we knew we were not gonna get caught and I was just wondering like like basically you have no problem with that…

PSR ¶ 28.

See also, for example, her communication with Laughton on June 13, 2023, when she

transmitted imagery of two of the children:

> LAUGHTON: I want to pass baby please
>
> GROVES: No
>
> GROVES: I took these for you today so I'm horny
>
> LAUGHTON: Oh you said sexting
>
> LAUGHTON: Is that a little girl
>
> GROVES: I wasn't being serious
>
> GROVES: Yes that's a little girl

> LAUGHTON: I like that I would like to see more of the pussy but I like that it fucking hot
>
> LAUGHTON: Is that one of the girls we get to play with
>
> LAUGHTON: That little boy pulling up his shirt looks like
>
> GROVES: The boy was getting a diaper on that's why his shirt is up
>
> LAUGHTON: Oh
>
> LAUGHTON: Did the girl give you an issue
>
> GROVES: No
>
> GROVES: The boy didn't either

PSR ¶ 15.

Defendant is an equal, active participant in conversations that span thousands of text messages and a variety of topics over just a *few weeks*. *See* PSR ¶¶ 28 – 39; Gov. Sent. Mem. Exh. A (selected messages), attached. These messages show the defendant, at times, standing up to a person who she alternately views as a partner and a manipulator. *See* PSR ¶ 34 (when Laughton writes, "I want to pass baby please," the defendant responds, "No / I took these for you today so I'm horny"). While it is true that Laughton is much more verbose than the defendant in many of the exchanges, the conversation is just that—a two-sided exchange, in which the defendant displayed a casual depravity that is, at times, shocking.

It is of little consequence to the assessment of this defendant's dangerousness and culpability whether she capitalized on the vulnerability of the toddlers in her care for her *own* sexual gratification or for her *girlfriend's*; so too is whether the sexualized dialogue and discussion about having sexual contact with the kids and whether they would tell their parents or the others at the daycare was true planning or mere fantasy. What really matters is that—for whatever reason—the *defendant* is the one who chose which children to target, the *defendant* is the one who

led those small children into the only bathroom that would shield her actions from the other adults, the *defendant* is the one who manipulated their clothing, who took pictures of their genitalia, and who distributed those pictures to her co-defendant, Laughton.  Indeed: *but for* Lindsay Groves's access to these children, this would not have happened.  The importance of this fact cannot be understated.

Furthermore, not only was the defendant able to conceal her heinous conduct from her family, her employer, and the families of the victims—which, by her own account, went on for over a year—but she also lied to anyone who confronted her about it.  She lied to the daycare staff and Tyngsborough Police in 2022,[2] and she lied to the Nashua Police in 2023 (before ultimately admitting her culpability once she was confronted with the evidence against her and the detective's disbelief in her story).  *See* PSR ¶¶ 21, 23; CST Exh. 5 (interview with police); Doc. 236, pp. 22-23.  The defendant also hid the fact that she was in an active relationship with Laughton despite having sought and obtained a restraining order against her.  This does not, of course, undermine a claim that defendant Groves was more vulnerable than defendant Laughton, or that defendant Laughton was, by her nature and in her relationship with defendant Groves, manipulative; but it does tend to show that defendant Groves knew what she was doing was wrong and that she would get in trouble if it came to light.  The mitigation presented by her ███████████████████ and lack of sophistication is present, for sure, but it can only go so far when stacked against the nature and circumstances of the offense.

Compounding the violation of trust inherent in this series of offenses is the fact that the

---

[2] To be clear, the government recognizes that defendant Laughton has a demonstrated pattern of retaliation against defendant Groves by reporting her conduct (in which Laughton was complicit) to the police.  But that does not undermine defendant Groves's admission that she *was* in fact engaged in the reported behavior, even if it wasn't investigated at the time.

defendant took advantage of her physical access to her very young victims.  Thankfully, she did not progress to sexually assaulting the children whose genitals she photographed for Laughton; but this is no small comfort to the victims' families, who continue to bear the brunt of the defendant's violation of their trust.  No parent should have to "carry the heavy burden of wondering how [they] will ever find the words to explain this to [their child] when he gets older."  *See* Victim impact statement, Minor 3 (filed under seal).  Nor should they ever have to second-guess leaving their children in the care of others, or constantly worry about the possibility that the images may have been shared, stored, or circulated beyond what law enforcement has been able to determine. *See* Victim impact statement, Minor 2 (filed under seal).

While the imagery recovered in this case does not involve the sexual abuse of the toddler victims, it does implicate their physical safety.  That is, this is not a case where an adult convinced a minor to self-produce imagery of themselves engaged in sexually explicit conduct; the crimes here involved the defendant literally removing defenseless children from the watchful eyes of other caretakers in order to undress them and photograph them.  This involves a physical violation.  In other cases involving hands-on offending by defendants charged with violations of 18 U.S.C. § 2251, courts in this district have often imposed sentences reflective of the seriousness of such offenses.  *See*, *e.g.*, *United States v. Joyner,* 24-CR-10057-DJC (unemployed defendant who produced child pornography of daughter with developmental delays over whom he had sole custody sentenced to 22 years, with government recommending 45 years); *United States v. Ubeda,* 23-CR-30016-BEM (defendant who extorted third party into producing child pornography with her son sentenced to 40 years consecutive to 10 year state sentence for similar conduct); *United States v. Benoit*, 22-CR-30014-MGM (defendant with no scored criminal history sentenced to 46 years for producing child pornography of two minor children, including daughter, and possessing

hundreds of other files of child pornography; government recommended 55 years); *United States v. Raymond*, 20-CR-10222-RGS (government recommended, and court imposed, 60 year sentence for 65-year-old defendant with no record for producing child pornography depicting her sexual assaults of two minors and surreptitiously recording others); *United States v. Nieves*, 19-CR-10367-DJC (21-year-old transgender defendant with significant history of abuse and self-harm and no record sentenced to 30 years for producing and distributing child pornography depicting her hands-on abuse of child known to her; government recommended 40 years); *United States v. Decarolis*, 19-cr-40038-TSH (defendant who produced child pornography involving five minors sentenced to 38 years); U*nited States v. Sheehan*, 18-CR-10391-RGS (50-year-old defendant with no record who produced child pornography involving her sexual assault of three minors sentenced to 45 years; government recommended 60 years.  Defendant was later resentenced to 17 years following remand on appeal overturning denial of motion to suppress); *United States v. Lee*, 18-cr-10105-IT (defendant who used messaging application to direct New Hampshire male to produce specific child pornography depicting sexual abuse of child known to that person sentenced to 20 years; defendant who sexually abused the child in producing the material sentenced to 50 years in D.N.H. in 18-cr-00004-LM); *United States v. Anthony DeOrdio*, 18-cr-30056-MGM (defendant who created child pornography depicting sexual abuse of one child known to him after having been previously convicted of a child pornography offense sentenced to 50 years); *United States v. Jonathan Monson*, 18-cr-30015-MGM (defendant who created child pornography depicting sexual abuse of one child known to him sentenced to 40 years); *United States v. Toronto*, 17-cr-10307-FDS (defendant who produced child pornography depicting sexual abuse of two children known to him sentenced to 40 years); *United States v. Germaine*, 17-cr-30010-ADB (defendant who created child pornography depicting sexual abuse of one child known to him sentenced to 35 years

10

pursuant to plea agreement).  These are not perfect comps, of course; but the undersigned is not aware of recently sentenced cases in the district involving teachers with a pattern of offending against such small children.

There are few types of cases where the violation of trust inherent to the crime is more jarring, or more demonstrative of how dangerous the offender actually is, because the offender—this defendant—was permitted to hide behind her perceived harmlessness.  The recommended sentence is entirely reasonable and warranted in this case, notwithstanding the fact that it is, objectively, very high.  As outlined in the PSR and above, the defendant was a person who apparently devoted her adult life to working with children but was either so depraved that she exploited the toddlers in her care regardless of that calling, or she was so easily manipulated to sexually exploit *multiple* children entrusted to her care in order to maintain a sexual relationship with another person that this Court should have no confidence that she will be able to confirm her conduct to basic societal, moral, and legal norms in the future.  The foreseeable consequences of this senseless predation include an amount of time in prison commensurate with the nature and circumstances of the offense and the need to prevent her from ever doing it again.  Here, that amount is 35 years.

## CONCLUSION

This is one of the most serious crimes that is prosecuted in federal court.  It should be treated as such. There is no reason to believe that anything but a truly lengthy term in prison (which, for this defendant, might very well be for a large portion of her adult life) will deter the defendant and others from committing similar offenses in the future.

The government recognizes that it is always difficult to quantify in months or years how much is "sufficient" to achieve the goals of sentencing.  In this case, that calculus leads to a term

11

of years that will incapacitate the defendant.  While the government's recommended sentence here is significant in length, it is not only reasonable, but also necessary in this case to promote respect for the law, to adequately punish the defendant for her criminal conduct, to deter her and others from offending in the same ways again, and for long-term protection of the public.

For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of 35 years' imprisonment, to be followed by five years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

LEAH B. FOLEY
United States Attorney

Date: May 28, 2026        By:   /s/ Anne Paruti_____
                                Anne Paruti
                                Jessica L. Soto
                                Assistant United States Attorneys
                                United States Attorney's Office
                                One Courthouse Way
                                Boston, MA 02210
                                617-748-3100

## CERTIFICATE OF SERVICE

I, Anne Paruti, hereby certify that the redacted version of this memorandum was filed through the Electronic Court filing system and will be sent electronically to the registered participants identified on the Notice of Electronic filing and the unredacted version and sealed attachments were sent to counsel of record by email.

Date: May 28, 2026                          /s/ Anne Paruti_____
                                            Anne Paruti
                                            Assistant United States Attorney

12